ROLLIN G. GREEN AND ANOTHER v.
DR. JOHN E. LARKIN.

245 N. W. 2d 454.

August 20, 1976—No. 45959.

*Burns & Norha, Patrick R. Norha,* and *Monte M. Miller,* for appellants.

*Altman, Geraghty, Mulally & Weiss, James W. Kenney,* and *David C. Hutchinson,* for respondent.

PER CURIAM.

This appeal arises out of a medical malpractice action in Ramsey County District Court, brought by appellants, Rollin G. Green and Mary Jean Green, against the respondents, Dr. John E. Larkin and Dr. Clifford G. Leach. The action was tried to a jury. During the course of that trial, appellants dismissed Dr. Leach as a defendant. The jury returned a verdict in favor of respondent, upon which judgment was entered. Appellants appeal from the trial court's order denying their motion to vacate the judgment and grant a new trial, and from the judgment itself. We reverse.

The essential facts are not in dispute. Appellant Rollin Green sustained a serious neurological injury March 29, 1973, during the course of back surgery performed by respondent, an orthopedic surgeon. The injury resulted from the combination of appellant's pre-existing, but undiagnosed, spinal condition and the surgical techniques utilized by respondent in performing the operation. Appellant's prior condition is known as "spina bifida," defined in Stedman's Medical Dictionary (2 Lawyers' ed.) p. 1489, as "a limited defect in the spinal column, consisting in absence of the vertebral arches, through which the spinal membranes, with or without spinal cord tissue, protrude." In Mr. Green's case, the condition apparently resulted in the exposure of sacral nerve roots, which were injured or damaged during surgery. Had respondent discovered this condition before surgery, he would have utilized different surgical techniques which apparently would have avoided the injury.

Approximately a year prior to Green's surgery, two sets of X-rays had been taken of his lower back, the area of the operation. One set was taken in December 1971 when he first consulted respondent. The second was taken in February 1972 in connection with Green's hospitalization for an unrelated condition. During the following year he had increasing problems and surgery was recommended. Before surgery, on March 28,

1973, Dr. Leach, a radiologist, performed a myelogram (a visualization or photography of the spinal cord following the injection of a radiopaque substance). Dr. Leach also examined at that time (March 1973) the February 1972 X-rays. There was no consultation between Dr. Leach and respondent, apparently the common practice in the medical profession if the radiologist discovers nothing abnormal in the X-rays.

In bringing suit against respondent and Dr. Leach, appellants claimed that both were negligent in failing to discover Mr. Green's pre-existing spinal condition from the X-rays and that respondent was negligent in the manner in which he performed the surgery. At the conclusion of Dr. Leach's testimony at trial, appellants voluntarily dismissed him as a defendant. The trial court ruled that Dr. Leach's dismissal constituted a "judicial admission" that "there were no X-rays indicating abnormality of [Mr. Green's] low back," and consequently removed from consideration by the jury the issue of whether respondent was negligent in failing to discover Green's spinal condition from the X-rays. Accordingly, the court instructed the jury:

"As I have indicated, this action was originally commenced by the Plaintiffs, Mr. and Mrs. Green, against both Drs. Leach and Larkin. Dr. Clifford Leach, as you heard in this courtroom, was dismissed from this lawsuit by the Plaintiffs themselves. According, as to Dr. Leach, there is no fact issue for you to consider.

"You are further instructed that as a matter of law there is no present issue in this case, nor can a finding of negligence be made against Dr. Larkin, the remaining Defendant, on the grounds that from reading or interpreting the X-rays he had any reason to know of or suspect the existence of the spina bifida condition in Mr. Green's sacrum.

\* \* \* \* \*

"* * * What is in issue, however, and the fact issue which you must decide in your deliberations, is whether or not Dr. Larkin was guilty of negligence and negligent conduct in the manner in which he performed the surgery on the day in question."

Appellants' expert, an orthopedic surgeon, was not permitted to testify with respect to respondent's failure to discover Mr. Green's spinal condition. Appellants' offer of proof reveals that their expert would have testified that (1) it was the customary and ordinary practice among orthopedic surgeons in the community to read and interpret their own X-rays and frequently to disagree with the interpretations of the radiologist, (2) that both sets of X-rays indicated the presence of Green's spinal condition, (3) further X-rays and other tests should have been taken which would have more clearly established the

presence of the spinal condition, and (4) the X-rays, properly interpreted, indicated the use of surgical techniques different from those utilized by respondent.

The only issue raised on appeal is whether the dismissal of the radiologist warranted the instruction by the trial court taking from the jury the question of Dr. Larkin's negligence in the taking and reading of X-rays, and failing to diagnose Green's spinal condition. We believe it did not.

In dismissing Dr. Leach, appellants had simply arrived at the conclusion that they could not prove a case against Dr. Leach; but they intended thereby no prejudice to their case against Dr. Larkin, as the offer of proof clearly indicates. Dr. Leach had only been engaged to perform myelography and had been shown the February 1972 X-rays. He was not shown the 1971 X-rays until the time of trial on cross-examination, nor had he been consulted by Dr. Larkin following the myelography. Dr. Larkin, on the other hand, had treated Green since he was consulted in December 1971. He had the two complete sets of X-rays and the benefit of a complete medical history of the patient, as well as Dr. Leach's myelography. Appellants offered to prove that an orthopedic surgeon frequently does not follow the opinion of a radiologist, but relies on his own reading of the X-rays in diagnosing a spinal condition. Thus, there was a complete and independent set of facts in appellants' case against Dr. Larkin as compared with the facts in the case against Dr. Leach. The complaint alleged separate cases of negligence against each doctor, and each was separately represented. With this background, it was a proper case for the jury to decide whether Dr. Larkin was negligent not only in performing the surgery but also in the reading of the X-rays and the making of his diagnosis prior to surgery.

Reversed and remanded for new trial.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.